UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:23-cv-101-BJB-LLK

MAYFIELD CONSUMER PRODUCTS, LLC, PLAINTIFF

v.

THE INTERNATIONAL GROUP, INC., DEFENDANT/THIRD-PARTY PLAINTIFF

v.

CONTRANS TANK GROUP GP INC.,
CONTRANS TANK GROUP LP,
NATIONAL TANK SERVICES,
TRIMAC TRANSPORTATION SERVICES, INC.
TRIMAC TRANSPORTATION, INC., and
TRIMAC TRANSPORTATION SERVICES
WESTERN, INC. DEFENDANT/THIRD-PARTY DEFENDANTS

# OPINION AND ORDER

This matter was referred to Magistrate Judge Lanny King under 28 U.S.C. § 636(b)(1)(A) for hearing and determining all pretrial matters, including non-dispositive motions. [DN 14]. Pursuant to this authority, a teleconference was held on August 3, 2026. [DN 150]. The Court allowed briefing, and before it now is IGI's Motion for a Protective Order, Motion [DN 154]. MCP filed a Response, [DN 155], and no reply has been requested by the Court. The matter being ripe for review, the Motion is **DENIED,** consistent with this order and subject to the limitations discussed below.

## 1. Background and Procedural History

The Court's prior Opinion and Order, [DN 100], outlined the background and facts underlying this litigation. To summarize further, this case involves breach of contract claims

among a washer, a tanker, and a candle maker. Mayfield Consumer Products, LLC makes candles and sells them to retailers throughout the United States. The International Group supplies MCP with wax. IGI sold twenty tons of wax to MCP in July of 2022, but unbeknownst to MCP, the load was contaminated with silicone. Every candle MCP made from it turned out to be unusable, so MCP sued IGI for nearly ten million dollars in damages. MCP and IGI then brought claims against a host of parties that were allegedly responsible for bringing uncontaminated wax from IGI's plant in Toronto to MCP's plant in Kentucky. IGI hired Contrans to ship the wax, and Contrans hired Trimac to clean and inspect its tank wagon prior to shipping from Canada.

The present dispute involves additional facts relating to non-party Arlene Candles, LLC and its relationship with IGI and Bath & Body Works ("BBW"). MCP seeks a production of documents from Arlene concerning an incident that MCP characterizes as similar and relevant to the one underlying this litigation. Namely, in 2021, IGI delivered wax to Arlene that was contaminated with silicone. Response at 2. After the Arlene Incident, BBW—a mutual client of IGI, MCP, and Arlene—implemented a policy forbidding its clients from sending BBW wax in trucks that had last contained silicone-based products. [DN 155-1] (email to IGI); [DN 155-2] (email to MCP). MCP alleges that IGI (and now-dismissed Contrans) violated this policy and has subpoenaed Arlene for nine categories of communications between it and IGI relating to the 2021 Arlene Incident. Subpoena [DN 155-4].

IGI argues that the non-party subpoena would hand sensitive commercial information over to a direct competitor. Motion at 2. It also argues that certain communications were transmitted in an effort to resolve the dispute between IGI and Arlene and are thus subject to a recognized settlement privilege, *see* Fed. R. Evid. 408. The nine Subpoena Requests, [DN 155-4] at 8, ask for 2021 and 2022 documents concerning:

1. Alene's contracts with IGI;
2. Alene's communications with IGI concerning "any Contamination" of Alene's facilities following receipt of IGI wax;
3. Communications with the tanker concerning IGI-involved contamination;
4. Burn-testing records;
5. Alene's communications with BBW concerning IGI- involved contamination;
6. Documents reflecting Alene's investigation of IGI- involved contamination;
7. Alene's communications with IGI concerning whether silicone was a permissible last contain for tankers carrying IGI wax;
8. Alene's communications with BBW on this subject; and
9. Alene's communications with IGI concerning wash policies for tankers carrying IGI wax.

**2. <u>Discovery Standard</u>**

District courts have broad discretion over docket control and the discovery process. *See In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996). "It is well established that the scope of discovery is within the sound discretion of the trial court." *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993) (citation omitted).

Courts "'have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26.'" *Barnett-Morgan v. Inverness Techs., Inc.*, No. 3:22-CV-00301-DJH-CHL, 2024 WL 3585138, at *2 (W.D. Ky. July 30, 2024) (quoting *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio 2011)). On motion or on its own, a court "may quash or modify any subpoena that requires disclosure of 'a trade secret or other confidential research,

development, or commercial information.'" *Brunswick TKTKonnect, LLC v. Kavanaugh*, No. 3:22-CV-00004-RGJ-CHL, 2025 WL 581352, at *6 (W.D. Ky. Feb. 21, 2025) (citing Fed. R. Civ. P. 45(d)(3)(B)(i)). Anyone with a legitimate interest at stake may challenge a subpoena. *Id.* at *7. This Court "has increasingly scrutinized motions for protective orders that do not make the necessary showing of good cause required by the Rules of Civil Procedure and case authority." *Bobalik v. BJ's Restaurants, Inc.*, No. 3:19-CV-0661-RGJ-LLK, 2020 WL 12811572, at *4 (W.D. Ky. Apr. 28, 2020).

Fed. R. Evid. 408 generally prohibits compromise offers and negotiations from being introduced as evidence:

> **(a) Prohibited Uses.** Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> **(1)** furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> **(2)** conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
> **(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.
>
> Fed. R. Evid. 408.

### 3. Analysis

#### a. Rule 408 and Discovery

Both parties recognize the Sixth Circuit's decision in *Goodyear*, which held that communications made in furtherance of settlement negotiations are not discoverable. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 332 F.3d 976, 979, 983 (6th Cir.2003).

IGI argues that *Goodyear* established a broad "federal settlement privilege[,]" Motion at 5, but this Court has directly rejected an expansive interpretation of that holding. "*Goodyear* does not create a broad privilege protecting from discovery any document or communication arguably related to settlement negotiations, fruitful or otherwise." *Westlake Vinyls, Inc. v. Goodrich Corp.*, No. 5:03 CV 00240 R, 2007 WL 1959168, at *3 (W.D. Ky. June 29, 2007) (criticizing reference to a "'federal settlement privilege'" as implying "a far more expansive ruling than the *Goodyear* panel announced"). Only "communications made, or documents created, for the specific purpose of furthering settlement negotiations" are protected from discovery. *Id.* Whether such communications or documents "will actually be *admissible* will be determined at the appropriate time," *id.* at *3 n.1 (emphasis in original), but in this discovery setting, Evidence Rule 408 is limited.

IGI states that the Arlene Incident took place "[w]ell before the events underlying MCP's claims" here, and "IGI and Alene resolved that dispute through a confidential settlement[.]" Communications made "for the specific purpose of furthering" that settlement may be protected; however, these requests appear to "cover communications and documents that could not possibly be protected by the settlement privilege[,] such as those created *after* a settlement agreement was finalized. *Schnatter v. 247 Grp., LLC*, No. 3:20-CV-00003-BJB-CHL, 2021 WL 5346516, at *6 (W.D. Ky. Nov. 16, 2021) (emphasis in original) (citing *Westlake Vinyls*, 2007 WL 1959168, at *4).

Although no Request asks specifically for settlement-related communications, IGI challenges Requests 2, 6, 7, and 9. Request 2 asks Arlene to produce "communications with IGI concerning any contamination of your facilities following your receipt of IGI's wax from January 1, 2021, through December 31, 2022." While some of these communications would involve

settlement, others may have occurred before negotiations ever began (or after settlement finalized, *see Schnatter,* 2021 WL 5346516, at *6). Request 6 seeks "documents reflecting your investigation(s) into any contamination of your facilities following your receipt of IGI's wax[.]" Again, while some of these documents may have been used to support Arlene's claim in compromise efforts, that does not automatically render them privileged. *See Westlake Vinyls*, 2007 WL 1959168 at *4 (*Goodyear* doesn't protect every document "arguably related to settlement negotiations.") Likewise, Requests 7 and 9 seek communications relating to certain facts and policies that are not shielded from discovery unless they were created in furtherance of settlement.

Accordingly, the Motion is denied on this basis, except to the extent that Requests 2, 6, 7, and 9 seek communications that were generated in *furtherance* of settlement. IGI will be required to produce a privilege log documenting (in robust detail, *see Patti's Holding Co., LLC v. Zurich Am. Ins. Co.*, No. 5:20-CV-84-BJB, 2025 WL 976294, at *4 (W.D. Ky. Mar. 31, 2025) (finding work-produce privilege forfeited where privilege log failed to establish the basis for protection)) its basis for withholding any communications subject to a claimed settlement privilege.

b. Proprietary Information

Under Rule 26, the Court may only limit discovery for good cause. Fed. R. Civ. P. 26(c)(1). The burden of showing good cause, or a "clearly defined and serious injury," is on the movant. *Nix v. Sword*, 11 F. App'x. 498, 500 (6th Cir. 2001) (internal quotation marks omitted). In the business context, the movant must show that disclosure would cause a specific harm. *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis*, No. 1:11-CV-0851, 2012 WL 3600106, at *5 (S.D. Ohio Aug. 21, 2012).

As IGI recognizes, *see* Motion at 6, courts in this circuit examine six factors in evaluating the need to protect sensitive business information from disclosure:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.
>
> *Stout v. Remetronix, Inc.,* 298 F.R.D. 531, 535 (S.D. Ohio 2014).

IGI provides supporting argument for only the fourth factor and claims that MCP is a direct competitor. Motion at 6. MCP disputes this assertion, arguing that they no longer sell candles to BBW. Response at 5; Rose Declaration [DN 156-1] at 3 ("MCP divested its candle operations and no longer supplies candles to BBW. As a result, it is no longer a competitor of Arlene."; "MCP does not purchase wax products from IGI for use in other products."). Even weighing this factor in IGI's favor, its one-page argument fails so show enough facts to justify granting a protective order. *See, e.g., Kavanaugh*, 2025 WL 581352, at *8 (denying motion for protective order where movant only provided enough information to weigh two of the six factors in their favor). The "barebones assertion that the requested information would cause [IGI] harm if it were disclosed is far" from meeting the required standard. *Id.* The Requests that IGI claims seek proprietary information are clearly relevant to this litigation. *See* Requests 1 (Alene's contracts with IGI), 3 (Communications with the carrier concerning IGI-related contamination), 7 (Alene's communications with IGI concerning whether silicone was a permissible last contain for tankwagons carrying IGI wax), and 9 (Alene's communications with IGI concerning wash policies for tankwagons carrying IGI wax). The only value that is apparent from these requests is their value as evidence in this litigation, and IGI has not presented specific facts showing their commercial value or sensitivity. Accordingly, the Motion is denied on this basis.

**CONCLUSION AND ORDER**

The Court **DENIES** IGI's Motion for a Protective Order, except to the extent that Requests 2, 6, 7, and 9 seek communications that were generated in furtherance of settlement. IGI shall produce responsive documents and a privilege log (if any) within twenty-one days of the entry of this Order.

September 3, 2026

**Lanny King, Magistrate Judge**
**United States District Court**

C: Counsel